Jose DIAZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0201–CR–12.

Court of Appeals of Indiana.

Oct. 7, 2002.

Barbara J. Simmons, Batesville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Jose Diaz ("Diaz") appeals his convictions for Class C misdemeanor driving without a license,[1] Class A misdemeanor failure to stop after an accident causing personal injury,[2] Class A misdemeanor operating a vehicle while intoxicated,[3] and Class A misdemeanor operating a vehicle while intoxicated with a blood alcohol level above 0.15.[4] We remand.

### Issue

Diaz raises one issue for review, which we restate as whether the trial court erred by trying and sentencing Diaz in absentia.

### Facts and Procedural History

The relevant facts most favorable to the convictions indicate that at approximately 4:00 p.m. on July 8, 2001, Diaz ran a red light at the intersection of Morris Street and White River Parkway in Indianapolis. Diaz's vehicle ran into the back of a motorcycle driven by Twila Henry ("Henry"). Henry's motorcycle spun and crashed. Kimberly Palmer ("Palmer") and her passenger were traveling in a car immediately

---

1. Ind.Code § 9–24–18–1(a).

2. Ind.Code § 9–26–1–2.

3. Ind.Code § 9–30–5–2.

4. Ind.Code § 9–30–5–1.

behind Diaz and saw the collision. Palmer followed Diaz's car, and her passenger telephoned the police on a mobile phone. Palmer followed Diaz's car closely for ten to fifteen minutes until the police were able to stop it.

Indianapolis Police Department Officer Julie Dutrieux ("Dutrieux") went to the accident scene, traveled to the reported location of Diaz's car, and stopped him. Dutrieux asked Diaz if he had his driver's license with him, and he responded that he did not. Dutrieux asked if Diaz had a driver's license at all, and he replied that he did not. Papers in Diaz's wallet identified him as Jose Diaz.

■ Indianapolis Police Department Officer Aaron Sparks ("Sparks") arrived at the scene where Diaz was stopped. Dutrieux ordered Diaz to exit his vehicle, and he "kind of just looked at [her]." Tr. at 16. According to Dutrieux, Diaz "didn't understand what [the officers] were saying." Id. When they opened the door to remove Diaz from the vehicle, Sparks and Dutrieux detected the odor of an alcoholic beverage. Sparks observed that Diaz had red, bloodshot eyes, and both officers noticed that he was unsteady on his feet. Dutrieux also noticed that Diaz had urinated on himself.[5] After gaining Diaz's consent, Dutrieux directed Diaz through three field sobriety tests in Spanish. Diaz failed all three tests. The officers read Diaz both his Miranda rights and the Indiana

Implied Consent Law in Spanish. Diaz agreed to accompany the officers to the police station to take a certified breath test. In Spanish, Dutrieux again advised Diaz of the Indiana Implied Consent Law and of how to complete the breath test. The breath test indicated that Diaz had a breath alcohol content of 0.26%.

On July 8, 2001, the State charged Diaz with Class C misdemeanor driving without a license, Class A misdemeanor failure to stop after an accident causing personal injury, Class A misdemeanor operating a vehicle while intoxicated, and Class A misdemeanor operating a vehicle while intoxicated with a blood alcohol level above 0.15.

On July 9, 2001, the trial court held an initial hearing, at which Diaz appeared in person. Appellant's App. at 4. The trial court advised Diaz of the charges filed and his jury trial rights and time limitations. Id. Diaz entered a preliminary plea of not guilty. Id. During this hearing, the trial court set a pretrial conference for July 10, 2001. Id.

The record indicates that on July 10, 2001, Diaz appeared by counsel at a pretrial conference.[6] The trial court set the next pretrial conference for July 24, 2001. Id. at 5. On July 24, 2001, Diaz appeared in person and by counsel at the pretrial conference and was released on his own recognizance. Id. At that time, the trial court scheduled the next pretrial conference for August 21, 2001. On that date,

---

5. When Dutrieux testified to this fact at trial, the trial court commented that "maybe [Dutrieux] scared the hell out of [Diaz]" and that "[t]hat's how he got rabbit feet and went back to Mexico." Tr. at 17. We find these comments to be unwarranted, unprofessional, and in violation of both the spirit and the letter of Canon 3 of Indiana's Code of Judicial Conduct, which requires a judge to be "patient, dignified and courteous" to all persons with whom the judge deals in an official capacity and to refrain from manifesting bias or prejudice based upon national origin.

6. For the pretrial conferences at which both Diaz and counsel were present, the chronological case summary ("CCS") entries bear the following notation: "Def. in person Def. by counsel". See Appellant's App. at 5. For the July 10, 2001 pretrial conference, however, the CCS entry bears the following notation: "Def. by counsel Def. by counsel". Id. We are unable to determine whether this is a typographical error or whether Diaz did not appear in person at that conference.

Diaz once again appeared in person and by counsel, and the trial court set the cause for trial on October 23, 2001.[7] *Id.*

On October 23, 2001, Diaz failed to appear for his bench trial. Diaz's counsel informed the trial court that Diaz was not present in the courtroom.[8] The State asked the trial court for a warrant for Diaz's arrest without bond. Tr. at 4. The trial court responded, "No, we are going to try him in absentia. We are going to do a case here today. He knows about this trial date." *Id.* After the State rested, the trial court asked, "Any evidence from the defense?" *Id.* at 23. Diaz's counsel replied, "Apparently not, Your Honor." *Id.* The trial court asked Diaz's counsel, "Do you have any explanation as to why your client is not here?" *Id.* at 23. Diaz's counsel indicated that she had no explanation and that she had not heard from her client. *Id.* The trial court found Diaz guilty as charged and imposed concurrent one-year sentences on all counts.[9] The trial court issued a warrant for Diaz's arrest. *Id.* at 25.

On November 14, 2001, at a warrant rearrest/surrender hearing, Diaz appeared in person and by counsel. Appellant's App. at 8. At the hearing, Diaz addressed the court through an interpreter, Shannon Carbajal ("Carbajal"): [10]

THE COURT: Mr. Diaz, do you understand that there was a trial in your absence?

MR. DIAZ (through Carbajal): Yes. That was a mistake that I made.

THE COURT: And, do you know that it is permitted by law for you to be tried,

when you do not appear, for the trial to go ahead without you being present?

MR. DIAZ (through Carbajal): I made a mistake. I'm sorry.

THE COURT: Now, do you wish to appeal that judgment?

MR. DIAZ (through Carbajal): Yes. I would like to be given one more opportunity, because ... if I can pay for another way. My family and my children, and I made a mistake, but I promise that I will come back to court.

THE COURT: That's not what I'm asking. I am asking, do you ... there was a judgment of conviction entered against you at trial. So, do you wish to appeal that judgment?

MR. DIAZ (through Carbajal): If they give me the opportunity, that is what I would like to have done.

THE COURT: All right. Do you have the money to hire an attorney to represent you through your appeal?

MR. DIAZ (through Carbajal): No, I don't have any money.

THE COURT: All right. I believe that you were represented by the Public Defender's Office at trial, and this Court is going to appoint pauper counsel, and grant leave for the trial counsel to withdraw their appearance. So, the Appellate Division of the Marion County Public Defender Agency is appointed to represent you for the purpose of perfecting your appeal in this cause; and there will be a transcript and Record of Proceedings furnished, in accordance with the Praecipe filed by the Marion

---

**7.** Master Commissioner Israel Cruz presided at this pretrial conference.

**8.** Senior Judge Webster Brewer presided at trial.

**9.** The trial court did not orally pronounce sentence on Diaz's conviction of Class C misdemeanor driving without a license. The or-

der of judgment of conviction, however, indicates that the trial court sentenced Diaz to one year on this count. *See* Appellant's App. at 11(b).

**10.** Judge Z. Mae Jimison presided at the warrant rearrest/surrender hearing. The record is silent as to whether Carbajal was retained by Diaz or appointed by the trial court.

County Public Defender Agency. Do you understand?

MR. DIAZ (through Carbajal): I don't understand English.

MS. CARBAJAL: I asked him if he understood me, and he said "Yes".

THE COURT: But, do you understand what she said to you, translating what I said?

MR. DIAZ (through Carbajal): Yes.

THE COURT: So, Ms. Davis, will there be someone from the Appellate Division getting in touch with him, then?

MS. DAVIS: Yes, there should be, Your Honor.

THE COURT: And, if you do not hear from someone within 30 days ... is my card up there ...

MS. DAVIS: No, Your Honor.

THE COURT: ... you need to write me. And, write in Spanish. I will have the interpreter interpret it for me.

MR. DIAZ (though Carbajal): Okay.

THE COURT: I want to make sure that all of your rights are protected.

Tr. at 29–32. The trial court appointed appellate counsel for Diaz and set a bond hearing for November 16, 2001.

Diaz now appeals.

## Discussion and Decision

■ Diaz contends that there is no evidence that he voluntarily, knowingly, and intelligently waived his right to be present at trial and that the trial court therefore erred in trying and sentencing him in absentia. "A criminal defendant has a right to be present during his trial under the Sixth Amendment of the U.S. Constitution and under [Article I, Section 13] of the Indiana Constitution." *Fennell v. State*, 492 N.E.2d 297, 299 (Ind.1986). "A defendant in a non-capital case may waive his right to be present at trial, but the waiver must be voluntarily, knowingly, and intelligently made.[11] The trial court may presume a defendant voluntarily, knowingly and intelligently waived his right to be present and try the defendant *in absentia* upon a showing that the defendant knew the scheduled trial date but failed to appear." *Ellis v. State*, 525 N.E.2d 610, 611–12 (Ind.Ct.App.1987) (citation omitted).[12] "The best evidence of this knowledge is the defendant's presence in court on the day the matter is set for trial." *Fennell*, 492 N.E.2d at 299. "A defendant who has been [tried in absentia], however, must be afforded an opportunity to explain his absence and thereby rebut

---

11. Where a defendant has voluntarily, knowingly, and intelligently waived his right to be present at trial, his continuing absence may be considered a voluntary, knowing, and intelligent waiver of his right to be present at sentencing. *See Gillespie v. State*, 634 N.E.2d 862, 864 (Ind.Ct.App.1994) (interpreting *Williams v. State*, 526 N.E.2d 1179 (1988); employing "voluntarily and knowingly" standard), *trans. denied; see also Cleff v. State*, 565 N.E.2d 1089, 1091 (Ind.Ct.App.1991) (noting that a defendant's right to be present at sentencing is based on Indiana statutory and common law and is not constitutionally derived), *trans. denied.*

12. In *Fennell* and other cases, our supreme court has stated that a defendant may "knowingly and voluntarily" waive the right to be present at trial. *See, e.g., Fennell*, 492 N.E.2d

at 299–300; *Lampkins v. State*, 682 N.E.2d 1268, 1273 (Ind.1997). We respectfully observe, however, that the United States Supreme Court has stated that "[w]aivers of constitutional rights not only must be voluntary but [also] must be knowing, *intelligent* acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. U.S.*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (emphasis added). In the context of the constitutional right to trial by jury, this court has explained that " '[a] voluntary waiver occurs if the conduct constituting the waiver is the product of a free will; a knowing waiver is the product of an informed will; [and] an intelligent waiver is the product of a will that has the capacity to understand[.]' " *Reynolds v. State*, 703 N.E.2d 701, 704 (Ind.Ct.App. 1999) (citation omitted).

the initial presumption of waiver." *Ellis*, 525 N.E.2d at 612. "This does not require a *sua sponte* inquiry; rather the defendant cannot be prevented from explaining." *Hudson v. State*, 462 N.E.2d 1077, 1081 (Ind.Ct.App.1984). As a reviewing court, we consider the entire record to determine whether the defendant voluntarily, knowingly, and intelligently waived his right to be present at trial. *See Reel v. State*, 567 N.E.2d 845, 846 (Ind.Ct.App.1991) (employing "voluntarily and knowingly" standard). A defendant's explanation of his absence is a part of the evidence available to a reviewing court in determining whether it was error to try him in absentia. *Fennell*, 492 N.E.2d at 299.

 In the instant case, Diaz appeared at the pretrial conference at which his trial date was set. When the matter was called for trial, the trial judge, who had not presided at the pretrial conference, assumed that Diaz knew of the trial date without querying counsel as to Diaz's knowledge.[13] The record clearly indicates that Diaz did not understand English and is silent as to whether he was assisted by an interpreter at the pretrial conference or was otherwise able to understand the proceedings. Under these circumstances, even the "best evidence" that Diaz knew of his scheduled trial date is far from dispositive as to whether in fact he did so.

At the warrant rearrest/surrender hearing, when Diaz attempted to explain his absence through an interpreter, the trial court replied, "That's not what I'm asking. I am asking, do you ... there was a judgment of conviction entered against you at trial. So, do you wish to appeal that judgment?" Tr. at 30. We therefore remand for the hearing required by *Ellis* to determine whether Diaz voluntarily, knowingly, and intelligently waived his right to be present at trial.

Remanded.

KIRSCH, J., and DARDEN, J., concur.

---

**13.** *See Gilbert v. State*, 182 Ind.App. 286, 291, 395 N.E.2d 429, 432 (1979) ("Here, the trial court followed the appropriate procedure. When Gilbert failed to appear, the proceedings were delayed and evidence was heard concerning Gilbert's whereabouts. Gilbert's attorney affirmed that he had spoken to Gilbert on the previous evening and that Gilbert knew the time and location of the trial. The trial court then issued a bench warrant for Gilbert's arrest, proceeded with trial and, upon Gilbert's appearance [after his apprehension], heard additional evidence."). We are acutely aware of the overwhelming caseloads and time pressures under which many trial courts must operate, especially those hearing misdemeanor cases in major metropolitan areas. Nevertheless, we observe that a brief inquiry on the record as to an absent defendant's whereabouts and knowledge of his scheduled trial date will serve both to protect the defendant's fundamental rights and to obviate the possibility of a lengthy, costly, and unnecessary retrial.