# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.04-1123

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Palwinder Singh Khehra, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

_____

Submitted: November 19, 2004
Filed: January 31, 2005

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

PER CURIAM.

Palwinder Khehra was found guilty of distributing pseudoephedrine, knowing and having reasonable cause to believe it would be used to manufacture methamphetamine (counts I & II) and conspiracy to distribute pseudoephedrine (count III). On appeal, Khehra argues that the district court should have appointed an interpreter for him at trial and that the evidence was insufficient to support the verdict. We disagree and affirm.

## I. *Background*

Khehra, a native of India, moved to the United States in 1998 and gained political asylum. Khehra is a 39 year old college graduate. Khehra and his family

eventually settled in Cedar Rapids, Iowa, where he opened a convenience store. Based upon information from Ben Hines, Khehra began selling large quantities of pseudoephedrine pills to Ben Hines and Dan Hines in 2002. Ben Hines used the pills to manufacture methamphetamine while Dan Hines traded the pills to another methamphetamine manufacturer in exchange for methamphetamine.

Khehra usually charged Ben Hines between $16.00 and $23.00 per bottle of pseudoephedrine when the retail price was only between $10.99 and $11.99 per bottle. During one sale, Khehra offered Ben Hines several cases of starter fluid that is often used to manufacture methamphetamine. During February and March of 2003, Iowa Division of Narcotics Enforcement Special Agent Greg Brugman made three controlled buys of pseudoephedrine from Khehra totaling fifty-four bottles and three packets of pseudoephedrine. On two occasions, Khehra asked Brugman if he was a cop or worked for the cops. On March 20, 2003, Khehra's store was searched and invoices were seized along with $42,174.00 in United States currency. Khehra initially denied selling more than two bottles of pseudoephedrine to Brugman and denied he knew him. Khehra spoke English during all of the controlled buys.

Khehra was charged in a three-count indictment. Counts I and II alleged that Khehra distributed pseudoephedrine, knowing and having reasonable cause to believe it would be used to manufacture methamphetamine. Count III charged conspiracy to distribute pseudoephedrine. There was also a forfeiture allegation for $42,174.00 in U.S. currency. The jury found Khehra guilty and he was sentenced[1] to 121 months imprisonment, two years supervised release, and a $300.00 special assessment was imposed.

---

[1]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

## II. *Discussion*

### A. *Sufficient Evidence to Support the Verdict*

Khehra contends there was a lack of evidence to prove he was familiar with the methamphetamine manufacturing process or that he knew Ben and Dan Hines were using the pseudoephedrine they purchased from him to manufacture methamphetamine. We "[view] the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence to support the jury's verdict." *United States v. Espino*, 317 F.3d 788, 791 (8th Cir. 2003). The jury's verdict may only be reversed if "no reasonable jury could have found the accused guilty beyond a reasonable doubt." *Id.*

In order to convict, the jury had to find that Khehra knew or had reasonable cause to believe the pseudoephedrine would be used to manufacture methamphetamine. Knowledge is inferred from surrounding circumstances. *United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 1994). Khehra sold pseudoephedrine to Dan and Ben Hines and Brugman in quantities exceeding what a reasonable person would consider legitimate consumer purchases. He also offered to sell starter fluid, a common ingredient in the production of methamphetamine. The fact that Khehra charged a premium price for pseudoephedrine is entirely consistent with making knowingly illicit sales of a controlled substance. Khehra twice asked Brugman if he was a cop before selling pseudoephedrine. Khehra purchased pseudoephedrine from more than one supplier to allay suspicion. During the search of his store, Khehra denied selling Brugman more that two bottles of pseudoephedrine at a time. *See United States v. Bewig*, 354 F.3d 731, 737–38 (8th Cir. 2003) (explaining that bulk sales of pseudoephedrine to routine customers suggested that defendant was acting as a front for an organized drug scheme, while the nature of the sales transactions suggested an illegal goal). The evidence was sufficient for the jury to find Khehra guilty.

B. *Appointment of an Interpreter*

Khehra argues for the first time on appeal that an interpreter should have been appointed for him before trial because his lack of fluency in English hampered his ability to mount an effective defense. The evidence is undisputed that Khehra's native language is the Punjabi dialect. However, Khehra never asked for an interpreter before sentencing, nor did he testify at trial. Khehra's defense counsel stated he had no difficulty communicating with Khehra. His counsel specifically asked Khehra whether he wanted or needed an interpreter for trial. Khehra said he did not. When Khehra requested an interpreter at sentencing, his stated reason was to aid the court in understanding Khehra's testimony, not to aid Khehra's understanding of English. The district court conversed with Khehra to assure that he had a sufficient mastery of English to proceed and determined that he did.

Khehra argues that at arraignment the district court was put on notice that he may have difficulties understanding English when authorities requested Khehra surrender his passport, but he was unfamiliar with the concept of a passport. We review a district court's decision to appoint an interpreter for abuse of discretion. *United States v. Coronel-Quintana*, 752 F.2d 1284, 1291 (8th Cir. 1985); *Luna v. Black*, 772 F.2d 448, 451 (8th Cir. 1985). Errors not brought to the attention of the district court are reviewed for plain error. *United States v. Gonzales*, 339 F.3d 725, 728 (8th Cir. 2003); Fed. R. Crim. P. 52(b). Khehra never objected to the failure of the district court to provide an interpreter. We therefore review for plain error and find none.

The appointment of an interpreter is placed squarely within the district court's discretion. *Quintana*, 752 F.2d at 1291; *Gonzales*, 339 F.3d at 727 (8th Cir. 2003); 28 U.S.C. § 1827. The district court should base its decision on factors, including the defendant's understanding of the English language and the complexity of the proceedings, issues, and testimony. *Quintana*, 752 F.2d at 1291. "[W]here no request is made for an interpreter and the record shows no need for one in that the defendant

has no difficulty in communicating, a trial court does not abuse its discretion by failing to appoint an interpreter." *Luna*, 772 F.2d at 451; *see also Gonzalez-Perez v. Harper*, 241 F.3d 633, 637 (8th Cir. 2001).

Khehra had lived in the United States for over five years and owned a convenience store in rural Iowa where he had to communicate in English to both customers and vendors. Khehra's defense counsel never asserted that he had any problem communicating with Khehra. Khehra told his counsel that he did not need an interpreter for trial. The tape recordings of the controlled purchases show Khehra conversing with Ben and Dan Hines and Brugman in English. Khehra also communicated with officers during the search of his store. The trial was not complex and Khehra only requested an interpreter at sentencing to assure the court understood him. Under the circumstances, we cannot say that the district court committed plain error by failing to appoint an interpreter for Khehra.

We affirm the jury's verdict and the sentence of the district court.

_____