Mustafa NUR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0606–CR–486.

Court of Appeals of Indiana.

June 6, 2007.

Rehearing Denied Aug. 6, 2007.

Christopher C. Zoeller, James C. Spencer, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Mustafa Nur appeals the denial of his motion for a new trial. We affirm.

### Issues

We restate the issues as follows:

I.  Whether the trial court abused its discretion in denying Nur's motion for a new trial based on the trial court's failure to provide Nur with an interpreter; and

II. Whether the trial court committed reversible error in allowing a paralegal from the public defender's office to speak with the deputy prosecutor prior to Nur's hearing on his motion for a new trial.

### Facts and Procedural History

The facts most favorable to the judgment are as follows. On May 15, 2005, probable cause was found to hold Nur in connection with an attempted robbery that lead to the death of his brother. On May 19, 2005, the State charged Nur with murder and class A felony attempted robbery. An initial hearing was held on May 20, 2005, in front of Commissioner Steven Rubick. Nur appeared at the initial hearing in person and by Jinnie Smith, paralegal for the public defender's office. The court began by asking Nur basic identification questions, to which Nur gave apparently accurate answers. For instance, the following colloquy took place:

THE COURT: Thank you. How far did you go in school?

THE DEFENDANT [Nur]: I've graduated.

THE COURT: Can you read and write the English language?

THE DEFENDANT: Yes.

THE COURT: Are you currently under the influence of alcohol or drugs? THE DEFENDANT: No.

THE COURT: Is there anything that would prevent you from understanding what we are discussing this afternoon?

THE DEFENDANT: I'm having a little problem with the language.

THE COURT: Okay. Is English your native language?

THE DEFENDANT: No, Somali is my native language.

THE COURT: I don't believe we have a Somalien [sic] interpreter.[1] Have you had an opportunity to review the charging information? I believe it's the document in front of you.

THE DEFENDANT: I didn't have nothing to do with this, Your Honor.

Def. Exh. B at 2–3.

The court explained the charging documents, and Nur indicated that he understood the charges. Similarly, Nur indicated to the court that he understood the potential consequences of a guilty verdict and that he understood his rights. The court questioned Nur about his financial and employment status, and Nur answered all questions without hesitation. After determining that Nur was indigent, the court assigned him a public defender. The court then ordered Nur to have no contact with an individual named Ali Jama. While the court was explaining the no-contact order, Nur interrupted and asked for a speedy trial. The court informed Nur that only the attorney of record could make that request.

Nur's next hearing occurred on July 20, 2005. Nur appeared in person and by counsel. Commissioner Rubick noted that Nur had refused the prosecution's plea offer and set a speedy trial date for August 29, 2005. Nur's attorney then expressed concern that Nur had requested both a speedy trial and numerous deposi-

tions, which requests were inconsistent considering time constraints. The attorney questioned Nur about his request to sever the trial from that of his co-defendant, even though a trial date had already been set. The attorney then asked whether Nur understood the pretrial memorandum, to which question Nur replied, "No, I did not, no." Def. Exh. C at 7. The court intervened:

THE COURT: Do you read and write English?

THE DEFENDANT: Yes, a little bit.

Def. Exh. C at 7.

The court explained that the pretrial memorandum expressed the State's plea offer. The court informed Nur that he did not have to accept the plea, but he did need to acknowledge the offer and decide whether he wanted to go to trial. Nur replied, "I want to go to trial, Your Honor. And this man right here I can't trust my life with, you know." Def. Exh. C at 7–8. Nur was referring to his attorney. Nur continued to complain about his attorney and asked that the attorney be removed from his case. The court explained that Nur would need to speak with the head of the public defender's office about changing attorneys.

Nur proclaimed his innocence and said that although he was able to read the probable cause affidavit, he could not understand why he was being held. The court instructed Nur's attorney to review the charges with Nur and instructed Nur to provide his attorney with a list of witnesses as soon thereafter as possible. Nur agreed. Nur then told the court that his attorney had told him he would be given a bond. The court informed Nur that murder was non-bondable in Indiana, and Nur must therefore be mistaken on the bond

---

**1.** This is the only mention on the record of an interpreter until Nur filed his motion for a new trial. Neither Nur nor his attorney ever requested that an interpreter be provided.

issue. The hearing ended without further comment from Nur.

A second pretrial conference was held on August 17, 2005, again before Commissioner Rubick. The hearing began with a discussion of Nur's competence. Nur had undergone a limited examination by a neuropsychologist referred to as Dr. Olive, who opined that Nur was not competent to stand trial.[2] The court informed the parties that in order to set a competency hearing, a continuance would have to be granted. Initially, Nur made no objection to the continuance, but as his attorney continued to explain the subject, Nur interposed:

THE DEFENDANT: What doctor?

[Nur's attorney]: The doctor you spoke with in the jail.

THE DEFENDANT: He's not a doctor, Your Honor. He's not a doctor.

THE COURT: Mr. Nur, I'm having trouble hearing you. Did you say you are not a doctor?

[Nur's attorney]: No he said he's not a doctor. A clinical neuropsychologist, I don't know that you have to be a doctor to be that.

Def. Exh. D at 3. The court instructed the parties to continue to refer to the neuropsychologist as a doctor. Nur's attorney then informed the court that Nur now objected to a continuance. The court therefore set a competency hearing for August 24, 2005.

Judge Patricia Gifford presided over the competency hearing. The doctors, however, had not been notified of the hearing, so the competency issues were rescheduled for August 26, 2005. The court then asked Nur about a letter he wrote complaining about his attorney.[3] In the letter, which was written in English,[4] Nur complained that his attorney was "misrepresenting" him. Def. Exh. I. The following conversation took place:

THE COURT: So what—your complaints about him are that he's misrepresenting you. What does that mean?

THE DEFENDANT: That means I've been here three months and I don't have my motion discovery (sic) or depositions or motion—

THE COURT: Okay. Well, let's start from the beginning. You wanted to have a speedy trial, right?

THE DEFENDANT: Yes.

THE COURT: During the period of 70 days it's impossible to do depositions. So whose depositions did you want taken? Who did you want to be deposed, anybody?

THE DEFENDANT: No.

THE COURT: Well, okay, so there are no depositions.

THE DEFENDANT: Yeah, everybody that's in my case.

THE COURT: Huh?

THE DEFENDANT: Everybody that's in my case.

---

2. The record reveals that Dr. Olive most likely found Nur incompetent because of Nur's refusal to speak with him. Def. Exh. E at 9; Def. Exh. F. at 2–3. However, in an evaluation with a second doctor, Dr. Parker, Nur was more open and was found competent to stand trial. Def. Exh. F. at 2. Nur later waived the competency issue by filing a statement of competency. Def. Exh. F. at 2.

3. On appeal, Nur asserts that he did not write the letter, as the handwriting appears different from that in a written statement Nur made for sentencing. When discussing the letter with Judge Gifford, however, Nur claimed to have been the author.

4. Some grammatical mistakes are apparent, but overall the English usage is correct.

THE COURT: Oh, you want to depose everybody in your case. Okay. Well, that wasn't done because you asked for a speedy trial.

THE DEFENDANT: Okay.

Def. Exh. E at 2–3.

The court continued to question Nur about the letter he had written. In the letter, Nur stated that he did not want his attorney or any of his attorney's "colleagues" to represent him. Def. Exh. I. Nur explained that he wrote that line because he did not want his attorney "or any of his friends" working on the case. Def. Exh. E at 3–4. Nur then explained to the court that he wanted to depose the witnesses in his case because he believed they had made false statements.

Following the discussion of the letter, Nur became confused when he was again asked to sign the pretrial memorandum, which stated that he had refused the plea offer. Nur stated that he did not want to plead guilty. The court explained that Nur was only being asked to sign an acknowledgement that an offer was made. In response to questions asked by his attorney, Nur stated that he was ready to go to trial the following Monday. Additionally, Nur asked to be tried separately from his co-defendant and explained, "And I don't want to go to trial because he did whatever he did, and I don't know nothing about that, and I don't want to be sitting right next to him like I'm guilty or something, something that I didn't know nothing about it." Def. Exh. E at 12. The court instructed Nur to review the issues with his attorney prior to trial, and the hearing ended.

The final pretrial conference was held on August 26, 2005, before Magistrate Amy Barbar. Nur reiterated that he believed he was competent and that he was ready to stand trial. Nur's attorney then reminded Nur that because of his speedy trial request he was unable to take depositions from the witnesses. Nur, however, stood firm on his request for both. The hearing concluded without further comment from Nur.

Nur's jury trial occurred on September 12, 2005.[5] The jury returned a guilty verdict. Nur then hired a new attorney and filed a motion for a new trial based on the court's failure to appoint an interpreter before or during trial. The court continued the sentencing hearing and scheduled an evidentiary hearing to evaluate Nur's ability to speak and understand English.

At the evidentiary hearing, the court permitted the State to speak with paralegal Smith, who had been present with Nur at the initial hearing. Although Nur objected, the court permitted the conversation because it believed that talking with persons who had dealt with Nur was necessary to evaluate Nur's ability to speak and understand English. Smith did not testify. Nur called as a witness Elena Tapia, a professor of linguistics with experience in determining the competency of persons in the English language.[6] Tapia testified that Nur's English was at an elementary level, disorganized, and non-coherent. Tapia concluded that she did not believe to a reasonable degree of certainty that Nur could understand complex and abstract thoughts in English. The State presented no evidence but instead relied

5. Nur did not request a trial transcript on appeal.

6. In its denial of Nur's motion for a new trial, the trial court noted that Tapia never actually spoke with Nur; that Tapia herself did not understand some of the legal terminology used; and that Tapia could not say whether Nur's understanding of legal process was worse or better than one for whom English is a first language.

on Nur's failure to request an interpreter at any point during the proceeding.[7]

Ultimately, the trial court denied Nur's motion for a new trial, explaining:

> To accept Defendant's argument would lead to the absurd result contemplated and rejected by the Court in *[People v. Ramos,* [26 N.Y.2d 272, 309 N.Y.S.2d 906] 258 N.E.2d 197, 199 (N.Y. 1970) ]; that is, that a defendant could sit by silently, take a chance of a favorable verdict, failing which he could secure a new trial on the ground he did not understand the proceedings. *Id.* Defendant herein did not sit silently. He spoke in both letter form and orally on numerous occasions displaying a clear understanding of the English language and the proceedings, and the ability to assist in his defense.

Appellant's App. at 42.

On January 18, 2006, the court sentenced Nur to fifty years.[8] Nur then filed a motion to correct error, essentially reasserting the arguments set forth in the motion for a new trial. The court denied the motion to correct error, and Nur appealed.

### Discussion and Decision

#### I. Denial of Motion for a New Trial

Nur appeals the denial of his motion for a new trial based on the trial court's failure to provide him with an interpreter. "An appellate court cannot assume the responsibility of weighing conflicting evidence in reviewing the trial judge's action on a motion for a new trial[.]" *Thompson*

*v. State,* 590 N.E.2d 633, 634 (Ind.Ct.App. 1992) (citations and quotations omitted). " 'The sole duty of an appellate court is to examine the record to see if: (a) The trial court abused its judicial discretion; (b) A flagrant injustice has been done the appellant; or (c) A very strong case for relief has been made by the appellant.' " *Id.* (citation omitted).

With respect to a defendant's right to an interpreter, our supreme court has stated that "[a]n indigent defendant who cannot speak or understand English has a right to have his proceedings simultaneously translated to allow for effective participation." *Martinez Chavez v. State,* 534 N.E.2d 731, 736 (Ind.1989), *reh'g denied.* The Court further explained:

> An interpreter enables a non-English speaking defendant to understand the trial, provides a means of communication between the defendant and his attorney, and translates the defendant's testimony if he testifies. The interpreter is necessary to implement fundamental notions of due process such as the right to be present at trial, the right to confront one's accusers, and the right to counsel.

*Id.* at 737 (citation omitted).

Beyond these general principles, however, Indiana courts and legislators have done little to elaborate on the appropriate procedures and standards that trial courts should follow when determining whether a particular defendant is to be considered "non-English speaking" for the purposes of appointing an interpreter.[9] Considering

---

**7.** An interpreter was sworn in for this hearing. The State pointed out, and the court agreed, however, that Nur did not once request the aid of that interpreter.

**8.** Nur wrote a statement in English for his presentence investigation report and referred to the State's evidence and wanting to tell his side of the story. For the presentence investi-

gation report, Nur also spoke in English with a probation officer who did not find or report a language barrier.

**9.** In *Martinez Chavez,* our supreme court stated that *indigent non-English speaking* defendants are entitled to an interpreter. 534 N.E.2d at 736. Whether a defendant is entitled to an interpreter is an entirely different

the explosive growth of both legal and illegal immigration in this country in recent years and the resulting prevalence of non-English speaking defendants in criminal courts, now is an appropriate time for this Court to enunciate such a standard.

Though not binding precedent in Indiana, cases interpreting the federal Courts Interpreter's Act, 28 U.S.C. § 1827(d)(1) (the "Act"), offer helpful guidance. Under the Act, "a defendant is only statutorily entitled to the appointment of an interpreter if the district court determines that the defendant [or a witness]: (1) speaks only or primarily a language other than the English language; and (2) this fact inhibits their comprehension of the proceedings or communication with counsel." *United States v. Black*, 369 F.3d 1171, 1174 (10th Cir.2004) *(citing United States v. Johnson*, 248 F.3d 655, 661 (7th Cir.2001)), *cert. denied.* Once a court is put on notice that there may exist a "significant language difficulty," it must make a determination as to whether an interpreter is needed. *Luna v. Black*, 772 F.2d 448, 451 (8th Cir.1985). Federal district courts are given wide discretion in appointing an interpreter. *Id.*

Courts are to base their decision whether to appoint an interpreter on factors such as the defendant's understanding of the English language and the complexity of the proceedings, issues, and testimony. *United States v. Khehra*, 396 F.3d 1027, 1030 (8th Cir.2005). Applying those factors, the court in *Khehra* did not find error in the trial court's refusal to appoint an interpreter for a defendant whose native language was a Punjabi dialect, but who communicated in English to his customers and vendors on a regular basis, failed to

assert any problem with communication, informed his counsel that he did not need an interpreter, had evidence presented against him at trial of him communicating in English while committing the alleged crime, and did not have a complex trial. *Id.* Similarly, in *United States v. Osuna*, 3 Fed.Appx. 739, 740–41 (10th Cir.2001), *cert. denied*, the Tenth Circuit upheld the district court's determination that an interpreter was not required for the defendant, a Mexican natural, who occasionally spoke English, spoke English with his lawyer and during the court proceedings, and who had never requested an interpreter.

Though not all states have the equivalent of the Act to guide their courts with decisions regarding the appointment of an interpreter, similar principles can be discerned from case law. For example, other states' laws similarly provide that a court's obligation to provide a non-English speaking defendant with an interpreter is not triggered absent a request by a defendant or some obvious manifestation of a significant language difficulty. *See, e.g., People v. Atsilis*, 60 Mich.App. 738, 231 N.W.2d 534, 535 (1975) (holding that a trial judge is under no duty to affirmatively establish a defendant's proficiency in English where no evidence on the issue is presented); *State v. Woo Won Choi*, 55 Wash.App. 895, 781 P.2d 505, 508–09 (1989) (holding that trial court need not appoint an interpreter where counsel indicated that he could communicate with defendant and that defendant could understand questions and answers), *rev. denied, superseded on other grounds by statute; Diaz v. State*, 491 S.W.2d 166, 167–68 (Tex.Crim.App.1973) (holding that the trial court was under no obligation to appoint an interpreter where

issue from whether a defendant is entitled to an interpreter at public expense. *See Arrieta v. State*, 856 N.E.2d 1286, 1287 (Ind.Ct.App. 2006) (considering whether a defendant who

had not demonstrated indigency was entitled to a court-provided interpreter at no cost), *trans. granted* (2007).

defendant did not request one and spoke English reasonably well).

Also, states similarly base the appointment of an interpreter on due process concerns. As noted by the California Court of Appeals, "It is imperative that every criminal defendant possess sufficient present ability to consult with his attorney with a reasonable degree of rational understanding." *In re Dung T.*, 160 Cal.App.3d 697, 206 Cal.Rptr. 772, 777 (1984) (alterations, quotation marks, and citation omitted). Further, the court in *Dung T.* noted that defendants should be able to "spontaneously" understand testimony, meaning that an interpreter should be provided when necessary to permit a defendant to clearly hear and understand the question-and-answer exchange that takes place in direct and cross examination. *Id.* The New York Appellate Division has stated that "there is no need to appoint an interpreter merely because English is not defendant's first language. Only when a defendant exhibits an inability to understand the proceedings or to communicate with counsel must a court inquire whether an interpreter is needed." *People v. Rivera*, 15 A.D.3d 859, 788 N.Y.S.2d 802, 803 (N.Y.App.Div.2005), *leave to appeal denied.* The Hawaii Supreme Court similarly held that where the record demonstrates that the defendant had a sufficient command of English to understand the

questions asked and answers given, the court's failure to appoint an interpreter is not error. *State v. Faafiti*, 54 Haw. 637, 513 P.2d 697, 699 (1973); *accord Flores v. State*, 509 S.W.2d 580, 581 (Tex.Crim.App. 1974) (holding that if a defendant understands and communicates reasonably well in English, then the mere fact that such defendant might be able to speak another language more fluently does not warrant using an interpreter at trial).

We agree with the rationale behind these cases. Whenever a trial court is put on notice that a defendant has a significant language difficulty, the court shall make a determination of whether an interpreter is needed to protect the defendant's due process rights.[10] A trial court is put on notice of a potential language barrier when a defendant manifests a significant language difficulty or when an interpreter is specifically requested. The court's decision as to whether an interpreter is needed should be based on factors such as the defendant's understanding of spoken and written English, the complexity of the proceedings, issues, and testimony, and whether, considering those factors, the defendant will be able to participate effectively in his defense. Absent such indications, however, the court is under no obligation to inquire into the defendant's need for an interpreter.[11] *Ramos*, 309 N.Y.S.2d 906, 258 N.E.2d at 199.

---

**10.** To protect a defendant's rights, we advise trial courts to make it clear to a defendant who may have a significant language difficulty that he or she has a right to an interpreter if the court determines that there is a need. It would be a fruitless and frustrating exercise for the appellate court to have to infer language difficulty from every faltering, repetitious bit of testimony in the record. But precisely because the trial court is entrusted with discretion, it should make unmistakably clear to a defendant who may have a language difficulty that he has a right to a court-appointed interpreter if the

court determines that one is needed, and, whenever put on notice that there may be some significant language difficulty, the court should make a determination of need. *United States v. Carrion*, 488 F.2d 12, 15 (1st Cir.1973), *cert. denied.*

**11.** Of course, the court is not always in the best position to know when a defendant might have a significant language difficulty. There is a similar duty upon the attorneys and other officers of the court to notify the court of any perceived need for an interpreter so that the

██ A trial court's decision whether to appoint an interpreter is reviewed for an abuse of discretion. *See, e.g., Khehra,* 396 F.3d at 1030. An abuse of discretion occurs if a decision is against the logic of the facts and circumstances before the court. *Bentley v. State,* 846 N.E.2d 300, 304 (Ind.Ct.App.2006), *trans. denied.* The abuse of discretion standard applies if the issue of appointing an interpreter is raised at the trial court level, either by the parties or by the court on its own motion. Where no request is made for an interpreter and the record shows that the defendant has no significant language difficulty, a trial court does not abuse its discretion by failing to appoint an interpreter. *Khehra,* 396 F.3d at 1030.

█ Where a defendant alleges for the first time on appeal that a federal district court should have appointed an interpreter, the claim is reviewed for plain error. *Id.* The federal "plain-error" test is "roughly equivalent" to Indiana's "fundamental-error" test. *Freeze v. State,* 827 N.E.2d 600, 604 n. 4 (Ind.Ct.App.2005) (citing *Smylie v. State,* 823 N.E.2d 679, 689 n. 16 (Ind.2005), *cert. denied).* *Compare United States v. Gonzales,* 339 F.3d 725, 728 (8th Cir.2003) (defining "plain error" as an error that is "plain, i.e., clear under current law" and that "affects the defendant's substantial rights" and stating that

an appellate court exercises discretion to consider plain error "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings") (citation and quotation marks omitted) *with Davis v. State,* 835 N.E.2d 1102, 1107 & n. 1 (Ind.Ct.App.2005) (noting that defendant's failure to object at trial results in waiver, unless error is fundamental, i.e., "a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.") (citation omitted), *trans. denied.*[12]

█ Here, Nur did not request an interpreter at any time prior to his conviction. We therefore review the trial court's failure to appoint an interpreter on its own motion for fundamental error. Nur focuses on the fact that when asked by the court whether he might have any difficulty in understanding the proceedings, he stated that he had "a little trouble with the language" and that Somali was his native language. Given the surrounding circumstances, we do not find this exchange sufficient to put the court on notice that Nur had a *significant* language difficulty, or that any misunderstandings were due to Nur's comprehension of English, as opposed to an underlying mental defect.[13]

court can make an informed decision on the issue.

12. We caution that with respect to constitutional rights, waiver must be voluntary, knowing, and intelligent. *Diaz v. State,* 775 N.E.2d 1212, 1216 n. 12 (Ind.Ct.App.2002). There will be times when a defendant's "background" and "total ignorance of and unfamiliarity with our legal system or the rights accorded him thereunder" excuse any failure to request an interpreter. *United States ex rel. Negron v. New York,* 310 F.Supp. 1304, 1309 (D.C.N.Y.1970), *order aff'd.* Thus, in certain cases a defendant will not be aware of his or her right to an interpreter and accordingly

will not be able to "voluntarily, knowingly, and intelligently" waive the right. *Id.; accord State v. Natividad,* 111 Ariz. 191, 526 P.2d 730, 733 (1974) ("A defendant who passively observes in a state of complete incomprehension the complex wheels of justice grind on before him can hardly be said to have satisfied the classic definition of a waiver as the 'voluntary and intentional relinquishment of a known right.' ").

13. We note that the procedure for determining whether a defendant is entitled to an interpreter is similar to the procedure for determining whether a defendant is competent to stand trial. A trial court must inquire

The fact that a defendant is originally from a foreign country, or speaks, primarily, a native language other than English, does not automatically put the court on notice that the defendant may have a significant language difficulty. *See, e.g., Rivera,* 788 N.Y.S.2d at 803; *Luna,* 772 F.2d at 451.

Nur conveniently glosses over the following exchange from the initial hearing:

THE COURT: Can you read and write the English language?

THE DEFENDANT: Yes.

Def. Exh. B at 2. Moreover, the record as a whole does not indicate that Nur was unable to effectively participate in his defense *because of the alleged difficulty with English.*[14] Nur participated in numerous question-and-answer sessions with the court in English. Nur's responses in those sessions were "responsive" and "indicative of his ability to speak English." *See Luna,* 772 F.2d at 451 (finding that a defendant did not have a language difficulty significant enough to require an interpreter when, other than having some syntactical errors, his testimony was "very responsive" and "indicative of [his] ability to speak and understand English."). Additionally, and as noted by the trial court in its denial of Nur's motion for a new trial, neither Nur nor his attorney ever requested an interpreter; Nur communicated with the court in English, both orally and in writing; and the evidence at trial showed that Nur communicated with native English speakers in English when orchestrating the crime.[15] Thus, based on the record, we cannot say that the court had notice that Nur had a significant language difficulty. As such, the court's failure to appoint an interpreter on its own motion was not fundamental error. *See, e.g., Martinez v. State,* 451 N.E.2d 39, 41 (Ind. 1983) (holding that it was not error for a trial court to have failed to provide, *sua sponte,* a competent interpreter where counsel did not request one prior to trial and defendant spoke and understood English well enough to conversantly discuss the crime with a police officer and had no trouble answering questions at the sentencing hearing). We therefore affirm the trial court's denial of Nur's motion for a new trial.

## II. Paralegal Speaking with Prosecutor

■ Next, Nur argues that the trial court committed reversible error in allowing defense paralegal Smith to speak with the deputy prosecutor prior to Nur's hearing on his motion for a new trial. Nur claims that the conversation violated his attorney/client privilege. Nur does not specify any privileged matter actually dis-

*sua sponte* into the defendant's mental condition whenever it has reasonable grounds to question competency. *Fine v. State,* 490 N.E.2d 305, 308 (Ind.1986); *see also* Ind. Code § 35–36–3–1 (requiring court to hold competency hearing if it "has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense"). The court may rely on its own observations of a defendant's behavior in determining whether a competency hearing is required. *Manuel v. State,* 535 N.E.2d 1159, 1162 (Ind.1989).

14. There is evidence that Nur had some difficulty understanding certain legal concepts and issues. We are not prepared to hold, however, that this difficulty was due to Nur's inability to speak or understand English. We agree with the State's observation that even native English-speaking non-lawyers have difficulty understanding the criminal justice system.

15. As noted above, the complexity of the issues and testimony at trial is a proper consideration when determining whether an interpreter is needed. Nur, however, did not request a trial transcript on appeal. Therefore, we are unable to review that portion of the proceedings.

cussed, nor does he offer support for his contention that any violation of the attorney-client privilege is per se prejudicial. Therefore, Nur's argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on. . . ."); *Davis*, 835 N.E.2d at 1113 ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."). We therefore affirm the trial court in all respects.

Affirmed.

SULLIVAN, J., and SHARPNACK, J., concur.