## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

FILED

Apr 28 2016, 6:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Thomas M. Barr
Thomas M. Barr & Associates
Nashville, Indiana

ATTORNEY FOR APPELLEE

Timothy E. Staggs
Arnholt & Staggs Law Office
Columbus, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danny Huynh,<br>*Appellant-Respondent,*<br><br>V.<br><br>Nga Pham,<br>*Appellee-Petitioner.* | April 28, 2016<br><br>Court of Appeals Case No.<br>03A04-1507-DR-964<br><br>Appeal from the Bartholomew<br>Superior Court<br><br>The Honorable Kathleen Tighe<br>Coriden, Judge<br><br>Trial Court Cause No.<br>03D02-1411-DR-5317 |

**Pyle, Judge.**

# Statement of the Case

Danny Huynh ("Husband") appeals the order dissolving his marriage to Nga Pham ("Wife"). He argues that fundamental error occurred when the trial court failed to appoint an interpreter for him and that the trial court abused its discretion when it divided the marital estate. Because Husband told the trial court that he would have no problem understanding the proceedings without an interpreter, we find no fundamental error. In addition, because Husband failed to introduce evidence as to the specific value of the marital property at the dissolution hearing, he is estopped from appealing the distribution.

We affirm.

# Issues

1. Whether fundamental error occurred when the trial court failed to appoint an interpreter for Husband.

2. Whether the trial court abused its discretion in dividing the marital estate.

# Facts

Husband and Wife, who are Vietnamese-Americans, were married in 1987. In November 2014, Wife filed a petition for dissolution.[1] At the June 2015 hearing

---

[1]There is no copy of the petition in the appendix.

on the petition, Wife was represented by counsel and Husband proceeded *pro se*. The hearing opened with the following colloquy:

> Trial Court: I thought the record was on earlier sir. I'll ask you again, for the record, um are you satisfied that we can proceed, that you understand English well enough that we can proceed without having the Vietnamese interpreter?
>
> Husband: So no problem
>
> Trial Court: Okay
>
> Husband: Because some time if I don't understand I can ask Miguel maybe he could[2]
>
> Trial Court: Okay. Perfect. Alright we'll proceed then. . . .

(Tr. 7).

[4] Wife's testimony and asset and debt summary, which was admitted into evidence at the hearing, revealed that she and Husband owned two nail salons in Indiana. Wife and the parties' adult son operated Julie's Nails ("Julie's") in Columbus, which opened in 2000. Julie's inventory included two televisions as well as eight pedicure spas and five tables that were all approximately nine or ten years old. In addition, Wife estimated there was approximately $7,000 in Julie's business account. Husband operated NBC Nails ("NBC") in Nashville, which opened in 2013. NBC's inventory included four pedicure spas and three tables, all of which were approximately two years old. Although Wife's asset

---

[2]Husband never mentioned Miguel again and apparently did not ask him any questions.

summary stated that the businesses were "considered to be about equal in value," the summary did not include a monetary value for either salon. (Petitioner's Exhibit 1).

[5] Wife also submitted tax forms, which revealed that in 2014, Julie's Nails had an $18,000 profit, and NBC had a $3,000 profit. Wife explained that Husband had closed NBC for a few months that year to visit Vietnam. Wife also explained that Husband had withdrawn $3,000 from Julie's checking account in May 2015. Wife's asset summary also included two vehicles. Wife drove a 2007 Lexus, which Kelly's Blue Book valued at $15,491, and Husband drove a 2010 Toyota Tundra, which Kelly's Blue Book valued at $35,440.

[6] Wife submitted a proposed property and debt division wherein she asked the trial court to award her Julie's, including all business equipment and accounts, as well as the 2007 Lexus and all personal property in her possession. She asked the trial court to award Husband NBC, including all business equipment and accounts, as well as the 2010 Toyota and all personal property in his possession.

[7] Husband testified that he "didn't know she was going to divorce [him but he] just want[ed] fair." (Tr. 28). Husband also testified that the parties owned additional property, including land in Vietnam and diamond jewelry. Husband explained that Wife had rings, a bracelet, and earrings. Husband also explained that he previously had owned a watch, a ring, and $6,000 in cash that he kept in a locked box at Julie's. According to Husband, he discovered that the items

were missing when he returned from a trip to Vietnam. Husband further testified that he did not know the value of either the land or the jewelry, but that he just wanted "to split 50/50." (Tr. 32).

[8] Husband also asked the trial court to "split up" Julie's. (Tr. 40). Specifically, Husband explained, "[Wife] take nail or I take it. If she takes, she pay me back, if I take, I pay her back." (Tr. 40). However, when asked how much money he believed he would be entitled to if the trial court awarded Julie's to Wife, Husband responded as follows: "I don't know . . . you can ask her, because I don't want to take something over her." (Tr. 40). When asked how much he would give Wife if he took Julie's, Husband responded, "you can ask her how much she want me to give to her." (Tr. 41). Lastly, Husband testified that he had two cabinets, a dining room table, televisions, a karaoke system, and sewing machines at his son's house.

[9] On re-direct, Wife testified that she had bought the property in Vietnam fifteen years ago and had given it to her father in 2002 or 2003. She also testified that she had one diamond ring that was worth $10,000 and that Husband had a diamond ring that was worth $11,000. Wife explained that she did not believe that Husband had left any property in the locked box at Julie's. Rather, Wife thought he had taken the items to Vietnam.

[10] On June 25, 2015, the trial court issued an order dissolving the parties' marriage wherein it found that Husband "simply wanted an equal distribution of the marital estate," and Wife "was content to divide the marital estate simply by

each party receiving the nail salon they currently operate and the vehicle they have been driving." (App. 7). The trial court further found that, based on the testimony of the parties, the value of the two salons was essentially equal. Thereafter, the trial court awarded the following property to Wife: (1) Julie's; (2) the 2007 Lexus; and (3) her $10,000 diamond ring. The trial court awarded the following property to Husband: (1) NBC; (2) the 2010 Toyota; (3) his $11,000 diamond ring; and (4) the dining room table and oldest television at his son's house. The trial court further explained that even if it believed that Wife had significantly more jewelry than Husband, the difference in the value of the jewelry still resulted in an unequal division of property in Husband's favor. The trial court also explained that "[n]o evidence of current ownership of the Vietnam property was provided to suggest the property should be considered part of the marital estate." (App. 6).

[11] Two weeks later, Husband, still acting *pro se*, filed a letter wherein he advised the trial court that Julie's was worth $90,000 and that NBC was worth nothing because it had no customers and had closed. He requested that the party receiving Julie's pay the other party $45,000. He also placed values on the televisions, cabinets, sewing machines, karaoke system, and dining room table and proposed that the party keeping these items should pay the other party half the value amount. Lastly, Husband advised the court that the Toyota should have been valued at $29,230 rather than $35,440. Husband closed the letter with a request that the trial court look at the case again.

A few days later, after reading Husband's letter, the trial court stated that Husband had had the opportunity to present his case and had failed to provide this information at the hearing. The trial court explained that it did not consider the letter to be a motion to correct error because it did not cite any error. Rather, according to the trial court, it was simply a request that the trial court consider new evidence, which the trial court could not do following the close of evidence at the hearing. Husband appeals the dissolution order and distribution of marital property.

# Decision

At the outset, we note that although Husband is represented by counsel on appeal, he appeared *pro se* at the hearing on Wife's dissolution petition. A *pro se* litigant without legal training is held to the same standard as trained counsel and is required to follow procedural rules. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. A trial court in not required to guide *pro se* litigants through the judicial system. *Id*. We now turn to the issues in this case.

## 1. Interpreter

Husband first argues that the trial court erred in failing to appoint an interpreter for him. INDIANA CODE § 34-45-1-3 provides that every party or witness in a civil proceeding who cannot speak or understand English is entitled to an interpreter. This Court reviews a trial court's decision whether to appoint an interpreter for an abuse of discretion. *Nur v. State*, 869 N.E.2d 472, 480 (Ind. Ct. App. 2007), *reh'g denied, trans. denied*. An abuse of discretion occurs if a

decision is against the logic of the facts and circumstances before us. *Id.* The abuse of discretion standard applies if the issue of appointing an interpreter is raised at trial, either by the parties or by the court on its own motion. *Id*.

[15] However, where, as here, the party alleges for the first time on appeal that a trial court should have appointed an interpreter, we review the claim for fundamental error. *Id.* The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles that renders the trial unfair, and the harm or the potential for harm is substantial. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*.

[16] With respect to determining whether an error is fundamental, *Mariscal v. State*, 687 N.E.2d 378, 382 (Ind. Ct. App. 1997), *reh'g denied, trans. denied*, is instructive. There, the trial court administered an oath to the interpreter but failed to inquire into the interpreter's qualifications. Mariscal did not object to the procedure the trial court used to appoint the interpreter, and one of Mariscal's attorneys affirmatively consented to the interpreter. On appeal, we held that where a defendant fails to object to the use of an interpreter and also affirmatively consents to the interpreter, there is no fundamental error, and any subsequent objections to the procedure used to appoint the interpreter are waived. *Id.*

[17] Here, as in *Mariscal*, Husband did not object to the trial court's failure to appoint an interpreter and affirmatively consented to proceeding without the use of an interpreter. In such cases, there is no fundamental error, and any

subsequent objections the trial court's failure to appoint an interpreter are waived.

[18] Father nevertheless appears to argue that the trial court should have "conduct[ed] a thorough *voir dire* to determine whether [he] had sufficient English language proficiency" to consent to proceeding without an interpreter. (Appellant's Br. 15). If a trial court is put on notice that a party has a significant language difficulty, the court shall make a determination of whether an interpreter is needed to protect that party's rights. *Nur*, 869 N.E.2d at 479. A trial court is put on notice of a significant language barrier when a party manifests a significant language difficulty or when an interpreter is specifically requested. *Id.* The trial court's decision as to whether an interpreter is needed should be based on factors such as the party's understanding of spoken and written English, the complexity of the proceedings, issues, and testimony, and whether, considering those factors, the party will be able to participate effectively in the proceedings. *Id.* Absent such indications, however, the trial court is under no obligation to inquire into a party's need for an interpreter. *Id.*

[19] Here, after reviewing the transcript in this case, we agree with Wife that the "whole of the transcript demonstrates that [Husband's] statements and questions were consistently on-topic, that he was repeatedly able to assert his opinions – where he had them – as to the differences in value of particular pieces of marital property and his concerns that certain property was not listed . . . ." (Appellee's Br. 6). We find nothing in the transcript which indicates that Husband was not able to participate effectively in the proceedings.

Accordingly, the trial court was under no obligation to inquire into Husband's need for an interpreter, and we find no error.

## 2. Division of Marital Estate

Husband also argues that the trial court abused its discretion in dividing the marital estate. The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Galloway v. Galloway*, 855 N.E.2d 302, 304 (Ind. Ct. App. 2006). When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute. *Id.* This presumption is one of the strongest presumptions applicable to our consideration on appeal. *Id.* We may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

Here, the trial court had to divide a marital estate that included two businesses for which Husband did not offer valuation evidence. This Court has previously explained that "'any party who fails to introduce evidence as to the specific value of the marital property at the dissolution hearing is estopped from appealing the distribution on the ground of trial court abuse of discretion based on that absence of evidence.'" *Perkins v. Harding,* 836 N.E.2d 295, 301 (Ind. Ct. App. 2005) (quoting *In re Marriage of Church*, 424 N.E.2d 1078, 1081 (Ind. Ct.

App. 1981)). This rule places the burden of producing evidence as to the value of the marital property on the parties rather than on the trial court. *Church*, 424 N.E.2d at 1081. In *Church*, we explained that it is more appropriate to require the parties to bear the burden of gathering and presenting evidence as to the value of the marital property than it is to place the upon the trial court the risk of reversal if it distributes the marital property without specific evidence of value. *Id.* The proper role of a court in dividing property pursuant to a dissolution is to review carefully all the evidence and then to divide the property based on a consideration of the factors listed in INDIANA CODE § 31-15-7-5. *Id.*

[23] Because Husband failed to introduce evidence as to the specific value of the marital property at the dissolution hearing, he is estopped from appealing the distribution. *See Galloway*, 855 N.E.2d at 306 (holding that husband was estopped from appealing the trial court's distribution where he failed to present any evidence regarding the value of wife's pension).

[24] Affirmed.

Kirsch, J., and Riley, J., concur.