2012 COA 61

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Daniel M. CHAVEZ, Defendant–Appellant.**

**No. 10CA1382.**

Colorado Court of Appeals, Div. A.

April 12, 2012.

John W. Suthers, Attorney General, William G. Kozeliski, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rachel C. Funez, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

¶ 1 Defendant, Daniel M. Chavez, appeals the trial court's judgment of conviction entered upon jury verdicts finding him guilty of second degree assault and felony menacing. We affirm.

## I. Background

¶ 2 In November 2006, Daniel Chavez and his brother Mario were driving through a parking lot when they encountered J.R.V. and D.D., good friends who had known each other since elementary school. The Chavez brothers, J.R.V., and D.D. grew up in the same neighborhood and had a confrontational relationship.

¶ 3 When they saw each other that night, they parked their trucks side by side and exchanged words. Then J.R.V. got out of his truck to fight and approached Mario, who was driving. Chavez got out of the passenger side and walked around the back, carrying a gun. Chavez pointed the gun at J.R.V. and told him to "back off." J.R.V. got back into his truck. As J.R.V. and D.D. drove away, they heard gunshots. The last person they saw with the gun was Chavez. After driving for a short time, J.R.V. realized that he had been shot in the leg.

¶ 4 At trial, Chavez's defense theory was that Mario had grabbed the gun from him and shot at J.R.V. and D.D. as they drove away. Chavez argued that he only took out the gun to scare J.R.V. and D.D. to stop them from hurting his brother. Although J.R.V. and D.D. testified that they did not see who pulled the trigger, they identified Chavez as the shooter.

¶ 5 The trial court initially precluded Chavez from introducing evidence about the victims' gang affiliation. After a prosecution witness testified that the police gang unit took over investigation of the crime because it believed the incident might be gang-related, the court allowed Chavez to pursue whether the crime itself was gang-related. The court agreed that if Chavez could establish that the crime was gang-related, he could ask further questions regarding whether the victims were affiliated with a gang. However, Chavez never recalled the victims to testify further. The limitation on this evidence is a basis for this appeal.

¶ 6 The jury acquitted Chavez of first degree attempted murder and convicted him of assault in the second degree against J.R.V. and one count of menacing against D.D.

¶ 7 At sentencing, Chavez had an interpreter. The court noted that there was no interpreter at trial, nor had a request for an interpreter been made, and assumed that an interpreter was not necessary at trial. Defense counsel explained that he did not request an interpreter earlier because Chavez did not testify, he could explain everything to Chavez at other times, and he did not want to burden the court with the cost of an interpreter. Defense counsel stated that Chavez wanted an interpreter at sentencing because he would feel more comfortable. The absence of an interpreter at trial for Chavez is also a basis for this appeal. We begin with this issue because if Chavez is correct, we need not address the possible evidentiary error.

## II. No Interpreter at Trial

¶ 8 Chavez contends that his rights to be present, to confront the witnesses against him, to testify, and to receive the effective assistance of counsel were violated because he did not have an interpreter at trial. We disagree.

### A. Standard of Review

¶ 9 Chavez contends that we must review this contention for structural error. We disagree.

¶ 10 Structural error is a defect that infects the entire trial process and renders a trial fundamentally unfair. *People v. Boykins,* 140 P.3d 87, 94 (Colo.App.2005). This type of error is found in a limited class of

cases; none of these circumstances is present in this case. *See Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

¶ 11 Failure to provide an interpreter may be structural error when either a request for an interpreter is denied or the trial court is on notice that the defendant needs an interpreter but fails to inquire. *Luu v. People,* 841 P.2d 271, 275 (Colo.1992) (Quinn, J., specially concurring). However, because Chavez did not request an interpreter and the trial court was not on notice that he needed one, plain error analysis is appropriate.

¶ 12 Nonstructural constitutional errors that were not preserved at trial are subject to plain error analysis. *People v. Miller,* 113 P.3d 743, 749–50 (Colo.2005). Under plain error review, reversal is warranted only when an error is obvious and substantial, and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.; People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003).

¶ 13 Chavez and his attorney did not request an interpreter during trial or object that one was not provided. This issue was not preserved; therefore, plain error analysis applies.

### B. Analysis

¶ 14 When a defendant does not speak or understand English, using an interpreter is "crucial to safeguarding the fundamental fairness of the trial." *People v. Avila,* 797 P.2d 804, 806 (Colo.App.1990). Without an interpreter, such a defendant would effectively be denied various constitutional rights, including the right to confront witnesses and the right to effective assistance of counsel. *United States v. Cirrincione,* 780 F.2d 620, 633 (7th Cir.1985). "The right to an interpreter rests most fundamentally, however, on the notion that no defendant should face the Kafkaesque spec-

tre of an incomprehensible ritual which may terminate in punishment." *United States v. Carrion,* 488 F.2d 12, 14 (1st Cir.1973).

¶ 15 However, a judge is not required to advise every defendant that he or she can request an interpreter. *Id.* at 14–15 (holding that the trial court has wide discretion to decide whether an interpreter is necessary); *see also People v. Ochoa–Magana,* 36 P.3d 141, 144 (Colo.App.2001) (trial court had no duty to advise defendant that he could use interpreter services to communicate with his attorney, absent "other particularized showing of need for a personal interpreter"). Only if it is apparent that the defendant has a significant language difficulty must the court act.

¶ 16 At the time of Chavez's trial, the court was required to provide and pay for language interpretation services when a defendant, one of the parties, a victim, a witness, or the parent or legal guardian of a minor charged as a juvenile was a non-English speaker. Chief Justice Directive (CJD) 06–03 (version in effect before June 2011). At that time, CJD 06–03 used the terms "non-English speaker" and "limited English proficient" (LEP) interchangeably and did not define either term. Now, however, the amended Chief Justice Directive, defines LEP as "[i]ndividuals who do not speak English as their primary language and who have a limited ability to read, speak, write, or understand English." *Id.* § I(J) (version effective June 2011). Under both the original and amended CJD 06–03, the court would have been required to provide and pay for an interpreter for Chavez if the service were necessary for him to comprehend the proceedings.

¶ 17 Although the right to an interpreter implicates other due process rights, it is not absolute (unlike the right to counsel) for every defendant.[1] A defendant in a criminal proceeding may have a right to an interpreter when he or she requests one. *Avila,* 797 P.2d at 805–06. A defendant also has a

---

1. "The status of the right becomes less certain ... where ... the defendant has some ability to understand and communicate, but clearly has difficulty." *Carrion,* 488 F.2d at 14. However, it is well settled that there is no right to an

interpreter if a foreign-born defendant speaks fluent English and is "completely aware of all of the proceedings." *Cervantes v. Cox,* 350 F.2d 855, 855–56 (10th Cir.1965).

right when the trial court is on notice that the defendant has an obvious and significant language difficulty that may prevent meaningful understanding of, or communication in, the proceeding. *See Luna v. Black,* 772 F.2d 448, 451 (8th Cir.1985); *Carrion,* 488 F.2d at 15. However, if it is not obvious that a defendant has a significant language difficulty, the trial court would not be on notice and is not required to determine sua sponte whether an interpreter is needed. *United States ex rel. Negron v. New York,* 434 F.2d 386, 390–91 (2d Cir.1970); *State v. Neave,* 344 N.W.2d 181, 188 (Wis.1984), *abrogated on other grounds by State v. Koch,* 175 Wis.2d 684, 499 N.W.2d 152, 158 (1993).

■ ¶ 18 When the trial court is not on notice of a defendant's difficulty communicating in English, the defendant and the defendant's attorney have the responsibility to request an interpreter. If an interpreter is not requested and the record indicates that the defendant did not have trouble communicating, a court's failure to appoint an interpreter is not plain error. *United States v. Khehra,* 396 F.3d 1027, 1030 (8th Cir.2005); *see also Hrubec v. United States,* 734 F.Supp. 60 (E.D.N.Y.1990) (absent a lack of comprehension, the fact that a defendant's primary language is not English does not by itself create a duty to inquire under 28 U.S.C. § 1827 about the need for an interpreter).

■ ¶ 19 Here, Chavez has not shown that the court's failure to sua sponte appoint an interpreter is plain error. As noted, he did not request an interpreter.[2] During the trial, Chavez and his attorney never indicated that Chavez had difficulty understanding the proceedings or that Chavez did not understand English.

¶ 20 As in *Luna,* 772 F.2d at 451, this is "not a case where the defendant obviously neither spoke nor understood the English language, or, despite some limited ability, clearly had difficulty with the language."

Chavez twice directly communicated with the district court without the assistance of an interpreter.[3] First, before trial, Chavez waived his right to a speedy trial orally and then through a written waiver, both in English. Second, Chavez apparently understood and responded to questions in English during his mid-trial *Curtis* advisement. *See People v. Curtis,* 681 P.2d 504 (Colo.1984). During both of these interactions, Chavez appropriately answered the court's questions.

¶ 21 Chavez does not contend that the trial court should have made him aware of his right to have an interpreter at the beginning of the trial. Instead, he contends that his use of an interpreter at sentencing should have prompted the court to inquire whether Chavez had needed an interpreter at trial. We disagree.

¶ 22 In a similar case, *Khehra,* the defendant used an interpreter at sentencing but did not have one at trial. 396 F.3d at 1030. He contended that the district court was put on notice at arraignment that he needed an interpreter and should have appointed one for him. *Id.* The defendant did not testify, and counsel said that he had no problem communicating with his client. *Id.* Additionally, the defendant stated that he wanted an interpreter at sentencing to help the court understand his testimony, but not to aid his understanding of English. *Id.* During sentencing, the court conversed with him to make sure "he had a sufficient mastery of English to proceed and determined that he did." *Id.* The Eighth Circuit rejected Khehra's claim and concluded that the district court did not commit plain error by failing to appoint an interpreter. *Id.* We agree with the analysis in that case and apply it here.

¶ 23 As in *Khehra,* the court here did not inquire about Chavez's ability to understand English before or during his trial, but it did so at sentencing: "We didn't have an interpreter in the trial. I'm assuming there was no need for an interpreter at trial. There

---

2. Any claims about what Chavez's counsel did or did not do may present ineffective assistance of counsel issues, which should be handled through a Crim. P. 35(c) motion. Thus, we do not address them here.

3. The People argue that defendant's pro se, post-trial Crim. P. 35(b) motion, written in English, also demonstrates that he did not need a translator at trial. We do not know how much assistance, if any, Chavez received in its preparation, and therefore it is not dispositive of Chavez's ability to understand English.

was never any request." Chavez's counsel responded, "One reason is he didn't testify and everything that I needed to explain to him I could do at other times, so that's why we didn't burden the Court with the cost of an interpreter. But he wanted to make sure when he spoke, he felt more comfortable." The court responded, "So just for expressing his statements?" The defense attorney replied, "Yes, that's correct."

¶ 24 This exchange confirmed that Chavez understood English sufficiently so that he did not need an interpreter at trial. *See People v. Rivera*, 15 A.D.3d 859, 788 N.Y.S.2d 802, 803 (N.Y.App.Div.2005) ("[T]here is no need to appoint an interpreter merely because English is not defendant's first language. Only when a defendant exhibits an inability to understand the proceedings or to communicate with counsel must a court inquire whether an interpreter is needed.").

¶ 25 Further, one of the prosecution's witnesses used an interpreter to testify. The presence of the interpreter would have informed Chavez (if he were not already aware) that he could also have an interpreter. Nevertheless, he did not request an interpreter.

¶ 26 Under these circumstances, the trial court was not on notice that Chavez had difficulty understanding English. Therefore, we conclude the trial court's determination that an interpreter was not needed is not error, much less plain error.

### III. Evidence of Gang–Related Activity

¶ 27 Chavez contends that the trial court's ruling prohibiting him from cross-examining the victims regarding their gang affiliation violated his Sixth Amendment rights, or alternatively, that the court abused its discretion in refusing to admit evidence of the victims' gang affiliation while admitting evidence that misled the jury to believe Chavez might be in a gang. We disagree.

### A. Confrontation Clause

¶ 28 Chavez contends that the trial court violated his Sixth Amendment confrontation rights by not allowing cross-examination regarding the victims' gang affiliation. We discern no violation.

### 1. Standard of Review

¶ 29 We review for plain error any unpreserved claim, including a constitutional claim. *Miller*, 113 P.3d at 749–50. Plain error refers to those errors that "so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment." *Sepulveda*, 65 P.3d at 1006.

¶ 30 At trial, Chavez argued that the evidence was admissible under CRE 401, 402, and 403. He did not argue that the trial court's ruling would excessively limit cross-examination of prosecution witnesses and violate the Confrontation Clause. Therefore, we review this claim for plain error. *See People v. Vigil*, 127 P.3d 916, 929–30 (Colo. 2006).

### 2. Analysis

¶ 31 A criminal defendant has a constitutional right under the Confrontation Clause to cross-examine witnesses, and it is error to excessively limit cross-examination, especially when it concerns a witness's bias, prejudice, or motive for testifying. *Merritt v. People*, 842 P.2d 162, 167 (Colo.1992). However, a defendant is not entitled to unlimited cross-examination. *Id.* at 165–66. A trial court has "wide latitude ... to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation which is repetitive or only marginally relevant." *Id.* at 166.

¶ 32 Evidence of gang membership may be admissible to show bias or, as res gestae evidence, to show motive and the particular circumstances of the crime. *People v. Gonzales–Quevedo*, 203 P.3d 609, 615 (Colo.App.2008) (citing *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984)); *People v. Martinez*, 24 P.3d 629, 633–34 (Colo.App.2000). Evidence regarding gang culture and evidence of gang retaliation may also be admissible to explain a witness's change in statement or reluctance to testify.

*People v. James*, 117 P.3d 91, 94 (Colo.App. 2004). Absent a specific basis for admission, however, evidence of mere gang association is irrelevant. *See id.*

¶ 33 Chavez argued that evidence of the victims' gang affiliation was relevant because gang membership motivated the victims to testify against him and tended to show bias. He also argued that evidence of gang culture and retaliation would show that gang members might testify for each other, conspire to have a gang enemy convicted, and change their stories. The victims' gang affiliation was also relevant, he maintained, because gang unit police officers responded to the scene and conducted an investigation.

¶ 34 The trial court ruled that defense counsel could inquire whether the incident at issue was gang-related, because it would be relevant to explain the circumstances of the incident or to show a motive for the crime itself. *See id.* However, the trial court did not allow inquiry into whether the victims belonged to a particular gang. Although defense counsel attempted to establish that the incident at issue was gang-related, prosecution witnesses testified otherwise.

¶ 35 While Chavez was not able to cross-examine the victims or any prosecution witnesses about the victims' gang affiliation, he was able to elicit evidence about the animosity between Chavez and the victims, as well as other evidence showing the victims' bias. *See Gonzales–Quevedo*, 203 P.3d at 615.

¶ 36 Chavez's right to confrontation was not violated by the trial court's limitation because the court did not excessively limit cross-examination. Chavez was able to present evidence to support his defense. Therefore, we conclude that there was not plain error.

### B. Exclusion of Victims' Gang Affiliation

¶ 37 Chavez also contends that the court abused its discretion in refusing to admit evidence of the victims' gang affiliation because (1) the evidence was relevant and highly probative and (2) the exclusion prejudiced him. We perceive no abuse.

### 1. Standard of Review

¶ 38 A trial court has broad discretion to determine the relevance, probative value, and prejudicial impact of evidence, and to determine whether evidence would confuse or mislead the jury, under CRE 401 and 403. *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 23 (Colo.2000). Accordingly, we will overturn a trial court's evidentiary determination only if it abuses its discretion. *Id.; see also Yusem v. People*, 210 P.3d 458, 463 (Colo.2009) (a ruling that is manifestly arbitrary, unreasonable, or unfair amounts to an abuse of discretion). In our review, we afford the evidence its maximum probative value and the minimum reasonable prejudicial effect. *People v. Webster*, 987 P.2d 836, 840 (Colo.App.1998).

### 2. Relevance and Probative Value

¶ 39 Evidence which tends to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence is generally admissible. CRE 401, 402. However, even relevant evidence may be excluded if its probative value is substantially outweighed by various factors, including the danger of unfair prejudice. CRE 403. Irrelevant evidence is not admissible. CRE 402.

¶ 40 Evidence of gang membership may be admissible in certain circumstances. An offer of proof to show why evidence is relevant "requires that the trial court be adequately apprised of the purpose for which the evidence is offered." *People v. Saiz*, 32 P.3d 441, 446–47 (Colo.2001).

¶ 41 As discussed above, Chavez did not make an offer of proof that demonstrated why the victims' gang affiliation was relevant or probative. Defense counsel's offer was based on generalities about gang membership and not on specific facts. For example, he argued that gang culture and gang membership could show bias or motive and that gang affiliation was necessary to establish that the victims colluded to implicate Chavez. He also argued that the evidence was relevant because the police gang unit investigat-

ed the incident.[4] However, he did not argue that gang retaliation was the motive for the incident or that the victims were members of a gang that was out to get Chavez. He did not argue that the victims' gang affiliation had caused them to change their statements.

¶ 42 This case is analogous to *Gonzales–Quevedo*, 203 P.3d at 614, where the trial court held that a victim's membership in a particular gang was irrelevant. The defendant in *Gonzales–Quevedo* was allowed to establish that the victims were members of the same gang. *See id.* One victim testified on direct that he was not a gang member, but that the other victims were in a gang. *Id.* Defense counsel attempted to impeach that victim based on a prior statement he gave to police that he was in a gang. *Id.* The trial court held that the defense's offer of proof was insufficient because defense counsel generally "suggested ... that the gang-related evidence might possibly show bias, that gang members tend to back each other up, and that there was a history of bad blood between the parties." *Id.* In finding that the evidence was not relevant, the trial court stated that evidence of gang affiliation was "being used with a broad brush by the defense." *Id.* A division of this court concluded that this ruling was not an abuse of discretion because the defendant's arguments were speculative and conclusory. *Id.*

¶ 43 Unlike in *Gonzales–Quevedo*, here the victims did not testify about their gang affiliation during direct examination and there was no evidence that the incident was gang-related. Therefore, the trial court ruled that Chavez was not allowed to inquire whether the victims were in a gang because the evidence was not relevant.

¶ 44 As the defendant did in *Gonzales–Quevedo*, Chavez introduced evidence of bias and animosity between the parties without relying on evidence of the victims' gang affiliation. He could have introduced further evidence of animosity and bias; Chavez's family members spoke at his sentencing, but not at trial, about the years of abuse they had endured from the victims. However, he did not make an offer of proof at trial that the victims' gang affiliation was relevant to explain his state of mind and his actions. *See Saiz*, 32 P.3d at 448 (determining whether a trial court abuses its discretion depends on the offer of proof considered at trial and not on a later assessment of the evidence's value on appeal). Chavez also argues that gang affiliation was relevant to show that the victims colluded against him, but there is evidence that the victims had been friends for years and did not like Chavez and his brother.

¶ 45 Accordingly, the trial court did not abuse its discretion in determining that the probative value of the evidence of the victims' gang affiliation was not substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence under CRE 403.

### C. Limitation on Evidence Misleading the Jury

¶ 46 Chavez also argues that the court's limitation on gang-related evidence was manifestly unfair because it may have misled the jury to believe he was a gang member. We conclude that any error was invited.

¶ 47 After the victims testified, a prosecution witness testified that the police gang unit took over the investigation because it believed the incident might be gang-related. The trial court ruled that the prosecution thereby opened the door to allow the defense to introduce gang-related evidence.

¶ 48 The concept of "opening the door" is not codified in the rules of evidence, and "is a court-promulgated curative measure." *People v. Melillo*, 25 P.3d 769, 775 (Colo.2001). "[T]he concept represents an effort by courts to prevent one party from gaining an unfair advantage by presenting evidence that, without being placed in context, creates an incorrect or misleading impression." *Id.*

*See* CRE 401; *James*, 117 P.3d at 94.

---

4. We agree that the trial court did not abuse its discretion in excluding evidence on this basis.

¶ 49 In this case, the evidence that the crime was gang-related or that the victims were affiliated with a gang was inadmissible. However, once the prosecution's witness "opened the door" by testifying that the incident might be a gang-related crime, Chavez was allowed to cross-examine witnesses about whether the incident itself was gang-related. He questioned several officers and detectives; all of them testified that the crime was not gang-related or that they did not remember. Chavez did not recall the victims to testify.

 ¶ 50 The invited error doctrine states that a defendant may not complain on appeal of an error that he or she has invited or injected into the case; a defendant must abide the consequences of his or her acts. *People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989). The doctrine is narrow and applies to errors in trial strategy but not errors that result from oversight or incompetence of counsel. *Id.; see also People v. Shackelford*, 182 Colo. 48, 50, 511 P.2d 19, 20 (1973). We apply the doctrine in this case.

¶ 51 Defense counsel repeatedly argued that evidence of gang-related activity was admissible. The court ruled that Chavez could fully explore the issue as it related to the victims only if he could establish that the crime was gang-related. Chavez chose to question prosecution witnesses on this issue in an attempt to elicit evidence that the incident was gang-related. This decision was presumably trial strategy, not oversight. *See People v. Wittrein*, 221 P.3d 1076, 1082 (Colo.2009) (holding that defense counsel invited error by cross-examining the witness on a particular topic, even though the response was impermissible); *cf. People v. Stewart*, 55 P.3d 107, 119–20 (Colo.2002) (court declined to apply invited error doctrine where omission of jury instruction was presumably oversight rather than a tactical decision), *distinguished by Townsend v. People*, 252 P.3d 1108, 1112 n. 2 (Colo.2011) (court applied doctrine where defendant's concession of fact conceivably was a strategic choice).

¶ 52 Chavez did not object to the officers' responses. He also did not argue that the evidentiary limitation created the misimpression that he was a gang member. In fact, no evidence or argument was presented that Chavez was in a gang. No witness testified that the alleged incident was gang-related. It is unclear how the jury could have inferred that Chavez was a gang member from this evidence.

¶ 53 Furthermore, Chavez does not contend on appeal that his counsel's questioning was due to oversight or incompetence. Under these circumstances, Chavez's tactical decision to question witnesses about the gang issue precludes him from claiming on appeal that the trial court abused its discretion. *See People v. Butler*, 251 P.3d 519, 522–23 (Colo. App.2010).

¶ 54 The judgment of conviction is affirmed.

Chief Judge DAVIDSON and Judge WEBB concur.