2013 COA 102

The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Eli Manuel VIGIL, Defendant–Appellant.

Court of Appeals No. 10CA1481

Colorado Court of Appeals,
Div. VII.

Announced July 3, 2013

John W. Suthers, Attorney General, Jillian J. Price, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE PLANK *

¶ 1 Defendant, Eli Manuel Vigil, challenges his convictions under the habitual domestic violence offender (HDVO) statute, section 18–6–801(7), C.R.S. 2012. We reverse and remand for further proceedings.

## I. Background

¶ 2 Defendant was charged in county court with misdemeanor counts in two separate cases, both arising from his conduct with his wife, the victim.

¶ 3 In the first case, 08M5089, defendant was charged by misdemeanor summons and complaint with third degree assault, theft under $500, violating a protection order, and a domestic violence sentence enhancer. After spending time together at a local club, the victim and defendant argued outside the door to her home. During a struggle, defendant headbutted the victim in the head and she lost consciousness. Defendant took the victim's phone and left. At the time of this incident, a restraining order was in effect protecting the victim from defendant.

¶ 4 In the second case, 09M1123, defendant was charged with criminal mischief under $500, theft under $500, violating a protection order, and a domestic violence sentence enhancer. Here, defendant and the victim had a few drinks at a local bar and argued regarding a phone call the victim received. While the victim was driving home, defendant grabbed the steering wheel of her car and turned the car into a nearby field. Defendant got out of the car and walked to the victim's home, while the victim drove. Defendant and the victim struggled over control of her keys in the doorway to her home. The same restraining order was in effect protecting the victim from defendant at the time of this incident.

¶ 5 In each case, the People moved to file an additional count to adjudge defendant an HDVO. Defendant objected, arguing that adding such a count would convert the misdemeanor case into a felony case, over which the county court lacked jurisdiction. Following a hearing, the county court granted the People's motions to add the HDVO counts.

¶ 6 The district court chief judge then issued a written order stating that the case was properly heard in county court as the matters were domestic violence misdemeanor charges. Pursuant to Seventeenth Judicial District Chief Judge Order 03–04, as amended in 2009, the chief judge authorized the county court judge to sit as a district court judge for the limited purpose of holding a hearing on the HDVO charges.

¶ 7 Defendant filed a motion challenging the county court's determination of his status as an habitual domestic violence offender as unconstitutional. He argued that, because designation of a defendant's crimes as habitual domestic violence acts does not merely allow an aggravated sentence, but exposes the defendant to a felony conviction rather than just a misdemeanor conviction, a jury must determine crimes of domestic violence under the HDVO statute.

¶ 8 Meanwhile, cases 08M5089 and 09M1123 went to trial in county court. In each case, defendant was convicted of violating a protection order and the court found that his acts were an incident of domestic

---

* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. I, § 5(3), and § 24-51-1105, C.R.S. 2012.

violence. The theft charge in case 09M1123 was dismissed, and defendant was acquitted of the remaining charges.

¶ 9 The county court judge, then acting as a district court judge, held a hearing on defendant's challenge to the constitutionality of the county court's determination of the domestic violence acts. The court, summarizing the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), as well as our state's progeny cases interpreting those holdings, concluded that after the jury tries the substantive offense, the court can properly determine both whether an act of domestic violence has occurred and whether a defendant should be adjudged an HDVO.

¶ 10 The court determined that in this case, the People proved beyond a reasonable doubt that defendant had been convicted of domestic violence acts more than three times since 2000, such that defendant was subject to HDVO sentencing. The court sentenced him to two concurrent three-year terms in the Department of Corrections (DOC).

## II. The Habitual Domestic Violent Offender Statute

¶ 11 Defendant contends that because he was charged with misdemeanor counts as well as felony counts pursuant to the HDVO statute, which exposed him to a felony conviction, he was entitled to be tried in accordance with felony trial procedures, and the court's failure to do so violated his statutory and constitutional rights. This question presents an issue of first impression.

### A. Standard of Review and Statutory Construction

¶ 12 When interpreting a statute, our review is de novo. *See, e.g., People v. Perez*, 2013 COA 65, ¶ 12, — P.3d ——, 2013 WL 1908991.

¶ 13 Our primary purpose is to effectuate the legislature's intent. *Montes–Rodriguez v. People*, 241 P.3d 924, 927 (Colo. 2010) (citing *People v. Cross*, 127 P.3d 71, 73 (Colo. 2006)). We first consider the plain language of the statute. *Id.* "We read words and phrases in context and construe them according to rules of grammar and common usage." *Perez*, ¶ 13. We do not presume that the legislature used language idly, and we give effect to every word, rather than render any superfluous. *People v. Iversen*, 2013 COA 40, ¶ 21, 321 P.3d 573. If the legislative intent is clear from the plain language of the statute, we need not apply other rules of statutory interpretation, and our analysis is complete. *Jefferson County Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 936 (Colo. 2010).

¶ 14 A statute is considered ambiguous if it is susceptible of more than one reasonable interpretation. *Pham v. State Farm Auto. Ins. Co.*, 2013 CO 17, ¶ 13, 296 P.3d 1038. Only where the statute's language is ambiguous may we turn to other principles of statutory construction and consider the consequences of a certain construction, the end to be achieved by the statute, and legislative history. *Bostelman v. People*, 162 P.3d 686, 690 (Colo. 2007).

¶ 15 Statutes are presumed to be constitutional, and to be invalidated, the statute "must be sufficiently infirm so that no limiting construction consistent with the legislature's intent will preserve its constitutionality." *People v. Hickman*, 988 P.2d 628, 634 (Colo. 1999).

### B. The Statute

¶ 16 Section 18–6–801(7) provides, in relevant part:

In the event a person is convicted in this state on or after July 1, 2000, of any offense which would otherwise be a misdemeanor, the underlying factual basis of which has been found by the court on the record to include an act of domestic violence as defined in section 18–6–800.3(1), and that person has been three times previously convicted, upon charges separately brought and tried and arising out of separate and distinct criminal episodes, of a felony or misdemeanor or municipal ordinance violation, the underlying factual basis of which was found by the court on the record to include an act of domestic violence, the prosecuting attorney may peti-

tion the court to adjudge the person an habitual domestic violence offender, and such person shall be convicted of a class 5 felony. If the person is adjudged an habitual domestic violence offender, the court shall sentence the person pursuant to the presumptive range set forth in section 18-1.3-401 for a class 5 felony.

¶ 17 Section 18-6-800.3, C.R.S. 2012, provides the following definitions:

(1) "Domestic violence" means an act or threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship. "Domestic violence" also includes any other crime against a person, or against property, including an animal, or any municipal ordinance violation against a person, or against property, including an animal, when used as a method of coercion, control, punishment, intimidation, or revenge directed against a person with whom the actor is or has been involved in an intimate relationship.

(2) "Intimate relationship" means a relationship between spouses, former spouses, past or present unmarried couples, or persons who are both the parents of the same child regardless of whether the persons have been married or have lived together at any time.

### C. Sentence Enhancers Versus Substantive Offenses

¶ 18 Statutory provisions that increase the felony level of an offense are generally construed as sentence enhancers rather than essential elements of the offense. *Vega v. People*, 893 P.2d 107, 113 (Colo. 1995). Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Aggravated sentencing may rely on (1) facts found by a jury beyond a reasonable doubt; (2) facts admitted by the defendant; (3) facts found by a judge after the defendant stipulates to judicial fact-finding for sentencing purposes; and (4) facts

regarding prior convictions. *Lopez v. People*, 113 P.3d 713, 719 (Colo. 2005).

### D. Statutory Interpretation Analysis

¶ 19 A division of this court has addressed the HDVO statute in *People v. Garcia*, 176 P.3d 872 (Colo. App. 2007), and concluded that it is a sentence enhancement statute, not a substantive offense. *Garcia*, 176 P.3d at 873. The division stated that "[b]y its plain language, this statute allows the prosecution, upon a defendant's conviction of a misdemeanor involving domestic violence, to petition the court to determine whether the defendant meets the criteria of a habitual domestic violence offender." *Id.* Only upon conviction of the underlying misdemeanor, does a defendant become eligible for sentencing under the HDVO statute. Accordingly, because the division concluded the HDVO count was only a sentence enhancer, the division further held that the defendant was not entitled to a preliminary hearing on the felony HDVO count. *Id.* at 874.

¶ 20 A division of this court has also addressed a similar statute, section 18-7-302(4), C.R.S. 2012, which provides that indecent exposure is a class six felony if the defendant has been convicted twice previously of the same or a comparable offense, which may be a misdemeanor. *People v. Schreiber*, 226 P.3d 1221 (Colo. App. 2009). The division concluded that section 18-7-302(4) must be a sentence enhancer, not a substantive offense, "because (1) a defendant may be convicted of the underlying offense without any proof regarding the sentence enhancer and (2) the sentence enhancement provision *only* increases the potential punishment." *Id.* at 1223 (emphasis added). Concurring in part, and dissenting in part, Judge Bernard argued that prior misdemeanor convictions under section 18-7-302(4) should be considered an element of the felony offense. *Schreiber*, 226 P.3d at 1225. Specifically, Judge Bernard noted that there are significant differences between felonies and misdemeanors beyond the mere length of the term of incarceration faced by the defendant. Such differences include the place of incarceration, the procedural protections enjoyed by the defendant (including the size of the

jury and number of peremptory challenges), and collateral consequences faced by a defendant who has been convicted of a felony. *Schreiber*, 226 P.3d at 1225–26.

¶ 21 We first address the question of whether the HDVO statute is a sentence enhancer or a substantive offense. We agree, in large part, with the analysis in *Garcia* and the majority in *Schreiber* on this question. Under the HDVO statute, a defendant may certainly be convicted of the underlying misdemeanor domestic violence offense without introduction of evidence of his or her prior acts of domestic violence. While the HDVO provision serves to increase the potential punishment, it also elevates the punishment into the range associated with a felony, which is a different nature of offense requiring different procedural guarantees under our state constitution.

¶ 22 It is of note that the defendants in both *Garcia* and *Schreiber* were charged and presumably tried in district court, and they appear to have been provided with the procedural protections to which a defendant is entitled in a felony trial. The division in *Schreiber* expressly reserved judgment on the issue and procedural posture in the present case, stating, "[W]e express no opinion whether a defendant who was denied the procedural protections required in felony trials could challenge elevation of his [misdemeanor] conviction to felony status at the time of sentencing on this basis." *Id.* at 1224.

¶ 23 Because the defendants in both *Garcia* and *Schreiber* were charged and tried in district court, the divisions in those cases were not required to address the issue presented in this case: whether a misdemeanor defendant (charged and tried in county court) who has not been provided with the protections and procedures in district court regularly accorded a defendant faced with felony jeopardy may nonetheless be convicted and sentenced for a felony upon a court's finding of prior convictions that serve as sentence enhancers.

¶ 24 Here, upon a plain reading of the statutory language of the HDVO statute, we conclude that the conviction of a defendant of a class five felony is required, as indicated by the legislature's use of the mandatory language "shall," upon fulfillment of three conditions: (1) the defendant is convicted of an underlying offense that would otherwise be a misdemeanor, which the court finds to include an act of domestic violence; (2) the defendant has three previous convictions of other acts of domestic violence; and (3) the prosecuting attorney petitions that the defendant be adjudged an HDVO. Upon such a conviction, the defendant must be sentenced within the presumptive range for a class five felony, again as demonstrated by the legislature's use of the mandatory language "shall." A class five felony carries a presumptive sentencing range of one to three years imprisonment in the DOC. § 18–1.3–401(1)(a)(I)(V), C.R.S. 2012. Article XVIII, section 4, of the Colorado Constitution, provides that "[t]he term felony, wherever it may occur in this constitution, or the laws of the state, shall be construed to mean any criminal offense punishable by death or imprisonment in the penitentiary, and none other."

¶ 25 We also note that the legislature used the term "otherwise" when it provided that felony jeopardy attaches to domestic violence offenses under certain circumstances, including "[i]n the event a person is convicted ... of any offense which would *otherwise* be a misdemeanor." § 18–6–801(7) (emphasis added). The term "otherwise," in its plain and ordinary meaning, is defined in *Webster's Third New International Dictionary* as "in a different way or manner," "in different circumstances: under conditions," or "if not." *Webster's Third New International Dictionary Unabridged* 1598 (2002). The use of the term "otherwise" in the HDVO statute indicates that the offense and conviction charged under the statute would be a misdemeanor offense and conviction under different circumstances, but, as was the case here, upon the addition of a charge under the HDVO statute, the charged offense is not a misdemeanor, but rather a felony.

¶ 26 Accordingly, there is no question but that the legislature intended for the HDVO statute to create a class five felony offense, punishable as such. Upon finding the three above-listed conditions, the defendant must be convicted and sentenced as a class five

felon. Because this language is unambiguous, we need not turn to other principles of statutory construction to discern its meaning.

### E. Felony Protections

¶ 27 If a defendant could be tried and sentenced under the HDVO statute in county court, the statute would permit the defendant to be convicted of a class five felony and sentenced to a prison term of one to three years in the DOC without ever having enjoyed the procedural protections of a felony prosecution. Under these circumstances, as is the case here, the HDVO statute serves to elevate a misdemeanor conviction to a felony conviction. While a felony defendant faces a greater potential punishment than a misdemeanor defendant, a felony defendant also enjoys a wide range of procedural protections that a misdemeanor defendant does not. *See Schreiber,* 226 P.3d at 1225 (Bernard, J., dissenting); *see also United States v. Rodriguez–Gonzales,* 358 F.3d 1156, 1160 (9th Cir. 2004) (where the existence of a prior conviction transforms a subsequent conviction from a misdemeanor to a felony, a prior conviction is more than merely a sentencing factor). The HDVO statute, as applied here to defendant, denied him critical constitutional and statutory protections required for felony convictions.

¶ 28 The Sixth Amendment of the United States Constitution provides a defendant with the right to a speedy and public trial by an impartial jury. U.S. Const. amend. VI. It does not specify the number of jurors the impartial jury must include. · However, article II, section 23 of the Colorado Constitution provides protection that is independent of and extends beyond that of the federal constitution. Specifically, it establishes " a right to a jury of twelve in criminal cases in 'courts of record' that cannot be circumscribed by the General Assembly or any rule of procedure." *People v. Rodriguez,* 112 P.3d 693, 699 (Colo. 2005). The supreme court has interpreted this to mean that, under article II, section 23, a defendant has a constitutional right to a jury of twelve in felony cases,

while a defendant charged with a misdemeanor may be tried by a jury of six. *See* § 18–1–406(1), C.R.S. 2012; Crim. P. 23(a)(1)(2); *see also Rodriguez,* 112 P.3d at 703 (right to a jury of twelve in felony cases does not extend to misdemeanor cases).

¶ 29 Because the HDVO statute, by its plain language, would permit a defendant to be convicted of a felony, we conclude that a defendant must also be provided with felony procedural protections, including trial by a jury of twelve in the district court.[1]

### F. Structural Error

¶ 30 Defendant contends that the application of the HDVO statute here constitutes structural error. We agree.

¶ 31 Structural error is an error that affects the framework in which the trial proceeds and requires automatic reversal because it renders the trial fundamentally unfair. *See People v. Wilson,* 2012 COA 163, ¶23, —— P.3d ——, 2012 WL 4829487; *People v. Chavez,* 2012 COA 61, ¶ 10, 318 P.3d 22. The Supreme Court has found structural error in a number of circumstances: total deprivation of the right to counsel; lack of an impartial trial judge; unlawful exclusion of grand jurors of the defendant's race; denial of the right to self-representation at trial; denial of the right to a public trial; and the erroneous instruction of the jury regarding reasonable doubt. *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (collecting cases). Denial of the right to a jury trial is structural error, the consequences of which are "necessarily unquantifiable and indeterminate." *Sullivan v. Louisiana,* 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). While defendant was not denied a jury trial entirely, he was denied the right to a jury consisting of twelve people, which is guaranteed to defendants facing felony conviction and sentencing in the Colorado courts.

¶ 32 The significance of the Colorado Constitution's guarantee of a twelve-person jury in felony trials, rather than a six-person jury, is profound. For example, a twelve-person

---

1. We note that, in the context of this case, and as defendant's counsel conceded during oral argument, the right to a jury trial in district court before a jury of twelve only applies when the People charge a defendant as an HDVO under the HDVO statute.

jury may deliberate longer, create more accurate results, and better reflect community values. Wayne R. LaFave et al., *Criminal Procedure* § 22.1(d) (3d ed. 2012). The overwhelming majority of states require that juries of twelve be empaneled in felony cases. *Id.*

¶ 33 Accordingly, we conclude that defendant's convictions must be reversed and the case must be remanded to the district court for a jury trial in the district court with a jury of twelve, should the People elect to pursue the prosecution. If defendant is convicted of the charges, the district court may then proceed with a hearing to determine whether defendant's prior domestic violence convictions render him eligible for sentencing under the HDVO.

¶ 34 Defendant argues that the determination of prior domestic violence convictions under the HDVO must be made by a jury, rather than by a judge. We disagree. The People contend in their answer brief that this issue was waived by defendant. Because the issue may arise on remand, we assume without deciding that this issue was not waived and address the issue on its merits.

¶ 35 For purposes of proving the prior convictions, the HDVO statute is a sentence enhancer: it subjects a defendant to a greater potential punishment. Because of the range of punishment to which defendant is exposed, the nature of procedural protections required under the state constitution are different to convict a defendant of the underlying offense, which would otherwise be a misdemeanor. However, that does not mean that the prior convictions charged under the HDVO are no longer *Blakely*-exempt. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. These prior convictions, which underlie a sentence enhancer, may still be determined by a judge. *See, e.g., Lopez,* 113 P.3d at 719.

### G. County Court Jurisdiction

¶ 36 Defendant asserts the county court lacked jurisdiction to preside over his trial under the HDVO statute. Because this issue may arise upon retrial, we review defendant's argument and agree in part.

¶ 37 We review jurisdiction, a question of law, de novo. *See, e.g., People v. Maser,* 2012 CO 41, ¶ 10, 278 P.3d 361. While the district court has jurisdiction over felony cases, a county court judge may sit as a district court judge and exercise the district court's jurisdiction, if the chief justice has delegated such authority to the chief judge of the district and the chief judge then makes an appropriate assignment. *People v. Jachnik,* 116 P.3d 1276, 1277 (Colo. App. 2005).

¶ 38 Here, the district court chief judge made a proper appointment order to the county court judge to preside over the HDVO hearing. On remand, if the district court chief judge decides that a county court judge should preside over the remainder of the felony trial, a new appointment order indicating a revised scope will be required. *Id.*

### III. Sufficiency of the Evidence in Case 09M1123

¶ 39 Defendant contends the evidence was insufficient to support his conviction in case 09M1123 for violation of a protection order. We disagree. A person violates a protection order when he or she knowingly contacts, harasses, injures, intimidates, molests, threatens, or touches any protected person ... and such conduct is prohibited by a protection order, and the person had actual knowledge of the contents of such order. § 18–6–803.5(1)(a), C.R.S. 2012. Reviewing the evidence as a whole, and in the light most favorable to the prosecution, we find that the evidence presented established that a protection order was entered against defendant in a separate case on June 8, 2007, listing the victim as a protected person, defendant signed the order, and, while the order was still in effect, defendant knowingly contacted the victim on March 17, 2009. *See People v. Scialabba,* 55 P.3d 207, 211 (Colo. App. 2002). Accordingly, the evidence was sufficient to support a conclusion by a reasonable person that defendant was guilty beyond a reasonable doubt of violating a protection order.

### IV. Juror Challenge

¶ 40 Because we reverse and remand with directions for a new trial in the district court,

we need not address whether the county court erred in denying defendant's challenge to Juror S in case 08M5089.

## V.   Conclusion

¶ 41 The judgment of conviction is reversed, and the case is remanded to the district court with directions to conduct further proceedings consistent with the procedures required in this opinion.

JUDGE LOEB and JUDGE TERRY concur.